IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENEWAL BY ANDERSEN LLC, | ) | CASE NO. 1:15 CV 1117 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| GREGORY J. FILLAR, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant. | ) | **AND ORDER** |

**Introduction**

In this diversity case the plaintiff, Renewal By Andersen LLC, has sued the defendant, Gregory J. Fillar, for breach of an employment agreement. The parties have consented to my jurisdiction.[1]

I had set this case for jury trial beginning on October 26, 2015.[2] In advance of the final pretrial scheduled for October 19, 2015,[3] the parties engaged in settlement negotiations through their respective attorneys. Although counsel reported to the Court that the parties had agreed to a settlement, a dispute has since arisen as to whether an agreement exists and, if one does, the terms of that agreement.

---

[1] ECF #15.

[2] ECF #28.

[3] ECF #28.

Renewal has filed a motion to enforce a settlement agreement.[4] I issued an order permitting a response[5] but Fillar did not file one. Nevertheless, I conducted an evidentiary hearing on the motion to enforce and have taken the motion under advisement.[6]

As explained below, because I conclude that the parties did enter into an enforceable settlement agreement, but also conclude that such agreement includes some but not all of the terms advocated by Renewal, I will grant the motion to enforce in part and deny it in part.

## Statement of the Case

Renewal's complaint seeks damages and injunctive relief in large part related to the alleged breach of an employment agreement by Fillar.[7] The parties do not dispute that Fillar resigned from his employment with Renewal in April of 2015 and subsequently accepted employment with Unique Home Solutions. Renewal has not joined Unique as a party in this case.

In anticipation of an October 26, 2015, jury trial date, and the court-imposed preparation requirements for the trial, the parties entered into settlement negotiations. On October 2, 2015, Fillar's counsel contacted the Court to advise that the parties had agreed to a settlement.[8] In a telephone status conference conducted on October 8, 2019, counsel

---

[4]ECF #40.

[5]ECF #38.

[6]ECF #44.

[7]ECF #1.

[8]Renewal Hearing Exhibit ( R.Ex. B)

confirmed the report of settlement but, advised that the parties had not yet signed the settlement agreement.[9] I, therefore, set another conference for October 14, 2015 with the statement that the conference would be telephonic if the parties had signed the agreement by that time.[10] The trial order remained in full force and effect.[11]

At the conference held on October 14, 2015, counsel reported that the parties had not signed an agreement. Fillar attended the conference and maintained that he had not agreed to settle the case on the terms represented to the Court by counsel for Renewal and his counsel of record. Counsel for Fillar advised of his intention to file a motion to withdraw as counsel. Counsel for Renewal stated his client's intention to file a motion to enforce settlement. I then issued an order vacating the trial order and setting a date for filing of a motion to withdraw and the motion to enforce.[12] I also set a date for an evidentiary hearing on the motion to enforce settlement.[13]

At that conference, I advised Fillar of his right to file an opposition to the motion to enforce and of his right to retain an attorney of his choice to represent him going forward. I also told Fillar that if he retained an attorney, I would schedule a status conference before

---

[9]ECF #36.

[10]ECF #36.

[11]ECF #36.

[12]ECF #38.

[13]ECF #38.

the hearing on the motion to enforce, if requested. Fillar did not file an opposition to the motion to enforce or retain an attorney.

I granted the motion to withdraw as counsel filed by Fillar's attorneys of record.[14] The hearing on the motion to enforce settlement went forward as scheduled with Fillar representing himself. One of his former counsel of record, Kenneth Marco, testified under trial subpoena.[15] Fillar also offered testimony under oath.

## Statement of Facts

Based on the testimony under oath at the hearing on Renewal's motion to settlement and exhibits offered and admitted into evidence at that hearing, I find the following facts established by a preponderance of the evidence.

In anticipation of the October 26, 2015, jury trial date and the preparations required by the court order for the final pretrial conference scheduled for October 19, 2015, Patrick Lewis, counsel for Renewal, and Kenneth Marco, counsel for Fillar, intensified ongoing settlement discussions. These discussions culminated in an email sent to Marco by Lewis on October 2, 2015 at 3:55 p.m.[16] The text of that message sets out the principal terms of a settlement agreement purportedly reached by the parties.

---

[14]ECF #43.

[15]ECF #42.

[16]R.Ex. A.

> Ken
>
> Following up on our telephone conversation. The parties have agreed to settle the Renewal v. Fillar matter. The principle terms are:
>
> Fillar would not sell replacement windows and doors for Unique for a period of 12 months from the date of the settlement agreement
>
> Fillar would pay $5,000 upon settlement in a lump sum. Unique would add $2,500 upon settlement in a lump sum in exchange for a release.
>
> Fillar agrees that if he leaves employment with Unique prior to the expiration of the 12 month period he would honor the remainder of the 12 month period and would refrain from employment in the sale of replacement doors and windows for the remainder of that period in the geographical area of Cuyahoga County and all bordering counties.
>
> Thanks [17]

Marco purportedly replied by a message dated October 2, 2015 at 4:04 p.m

> Patrick,
>
> That is my understanding of the agreement. I already contacted the court and informed them that we have reached an agreement. Enjoy your weekend.[18]

At some point before sending the reply email, Marco had discussed with Fillar the restriction on selling replacement doors and windows for Unique for 12 months from the date of settlement and the payment of $5,000. Fillar agreed to these terms as his only option. Marco did not discuss with Fillar the $2,500 payment by Unique.[19]

---

[17]*Id.*

[18]R.Ex. B.

[19]Renewal has not joined Unique as a defendant in this case. Any agreement that Renewal and Unique may have entered into has no bearing on the pending motion to enforce

Fillar asked Marco what would happen if he resigned from Unique.  Marco responded that he could not guarantee that Renewal would dismiss the suit.  Fillar communicated directly with Lewis on this question but received no response.  Marco testified that he did not recall if he discussed the third principal term of the settlement as set out in Lewis's message - a 12-month restriction on employment on the sale of replacement doors and windows in the event that Fillar leaves Unique - before he replied to Lewis's message.

Lewis prepared a written settlement agreement based on the email exchange with Marco.[20]  Marco presented it to Fillar, who refused to sign it because of the continuing restriction on sales activity should he leave Unique.  Unique then terminated Fillar.

Fillar testified that Marco did not present the post-Unique continuing restriction settlement term to him before the October 2, 2015, email exchange between Lewis and Marco.  He believed, as of October 2, 2015 based on Marco's statements and Lewis's silence, that the settlement would not address that matter, then speculative only because he remained a Unique employee.

---

a settlement agreement between Renewal and Fillar.

[20]R.Ex. D.

**Analysis**

**1.** *Applicable Law*

This Court has jurisdiction to enforce a settlement agreement, even if not reduced to a writing signed by the parties, while the underlying case remains pending.[21] This includes oral settlement agreements made off the record and not in the presence of the Court.[22] The Court's finding of fact on a motion to enforce settlement must be upheld unless clearly erroneous.[23]

Where the settlement at issue was negotiated in Ohio, Ohio law applies.[24] Under Ohio law, the retention of an attorney to negotiate and settle a claim gives the attorney no implied or apparent authority absent the expressed authority of the client.[25] A client's provision of express authority also gives his attorney implied authority to do anything "reasonably

---

[21]*Graley v. Yellow Freight Systems,* 221 F.3d 1334, 2000 WL 799779, at 4 (6th Cir. June 14, 2000) (unreported table decision); *Hinton v. Trinity Highway Products, LLC.*, 4:12CV1063, 2012WL5054140, at*2 (N.D. Ohio Oct. 18, 2012).

[22]*Id.*

[23]*Graley*, 2000 WL 799779, at *3.

[24]*Hinton*, 2012 WL 5054140, at *2.

[25]*Id.* As Judge Vecchiarelli explained in *Hinton*, the Sixth Circuit's decision in *Capital Dredge and Dock Corp., v. City of Detroit*, 800 F.2d 525, 530 (6th Cir. 1986) applied Michigan law, which recognizes the principle that the hiring of an attorney and holding of that attorney out as counsel in a matter clothes the attorney with apparent authority to settle a claim connected with that matter. Ohio law, however, has not embraced that principle. *Id.* at *3. Renewal relies upon the Sixth Circuit decision in *Noga v. Parts Associates Inc.*, 205 F.3d 1341, 2000 WL 178385, at *4 (6th Cir. Feb. 8, 2000)(unpublished table decision), which cited *Capital Dredge* with approval. The Michigan rule, despite the certainty that it may bring to disputes over settlement agreements, is not the law in Ohio.

necessary to carry into effect the power actually conferred."[26] The determination of a client's express authority to settle his claim "maybe ascertained from the surrounding circumstances."[27]

### 2. *Express Authority to agree to settlement terms for payment of $5,000 and 12 month restriction during employment with Unique*

Lewis's email identified the first two of three principal terms:

- a restriction on selling replacement doors and windows for Unique for a 12-month period after the date of the settlement agreement, and

- payment of a lump sum of $5,000.

Renewal has established by a preponderance of the evidence that Marco had the express authority to agree to a settlement incorporating those terms. Marco and Fillar discussed those terms before Marco sent the confirming email, and Fillar agreed to a settlement of these terms as his only option. From the surrounding circumstances Fillar's consent to a settlement involving restrictions on his employment with Unique and a lump sum payment has been established.[28]

### 3. *Express authority to agree to a settlement term restricting employment after employment by Unique.*

But Renewal has not proven by a preponderance of the evidence that Marco had express authority to agree to the third principal term of settlement set out in Lewis's email

---

[26] Rubel v. Lowe's Home Centers, Inc., 597 F. Supp.2d 742, 745 (N.D. Ohio 2009).

[27] *Id.*

[28] *Id.*

message - a restriction on employment in the event Fillar left Unique. Fillar questioned Marco about what would happen if he left Unique's employ. Marco told him that he could give no guarantees. Fillar posed the same question in direct communications to Lewis, which went unanswered. Based on this undisputed evidence, I cannot find that Fillar expressly authorized Marco to agree to this term.

**4.** *The materiality of the term restricting Fillar's employment after leaving Unique*

The failure of the term restricting Fillar's employment if he left Unique within 12 months of settlement does not prevent the formation of a enforceable settlement agreement. Fillar's employment agreement with Renewal contains a two year restriction on competitive activities from the date of termination of his Renewal employment.[29] Fillar resigned from Renewal in April of 2015.[30] The restriction would run to April of 2017. The restriction on post-Unique employment in the putative settlement would only extend to October or November 2016. The restriction in the settlement referred to in counsel's email exchange is less favorable to Renewal than the one in the employment agreement.

Furthermore, the written memorialization of the settlement prepared by Renewal's counsel, which Fillar refused to sign, contains a severability clause providing that "if any part of it (the agreement) is found unenforceable, the other parts remain valid and enforceable.[31] This evidence supports the conclusion that the post-Unique employment restriction does not

---

[29] ECF #1, Exhibit A, ¶ 9.

[30] ECF #1, ¶ 11.

[31] R.Ex. D, ¶ 11.

constitute a material term barring enforcement of portions of the agreement entered into in by counsel for Fillar with express authority of his client

## Conclusion

Marco, counsel for Fillar, had Fillar's express authority to agree to the settlement of this case for a lump sum payment of $5,000 and a restriction that Fillar not sell replacement doors and windows for Unique for a period of 12 months from the date of the settlement agreement. Marco did not have Fillar's express authority to agree to any restriction of employment or sales activity in the event that Fillar left Unique's employment during the 12-month period.

Accordingly, I conclude that:

- An enforceable agreement exists to settle this case on the terms set out above that Marco had Fillar's express authority to agree to.

- Renewal's motion to enforce the settlement agreement contained in the email exchange between Attorneys Lewis and Marco of October 2, 2015[32] is granted to the extent of declaring an enforceable contract as to those terms that Marco had Fillar's express authority to agree to. Otherwise the motion is denied.

- In consideration of that settlement, this action will be dismissed with prejudice.

A separate judgment entry will issue.

    IT IS SO ORDERED.

Dated: October 30, 2015                      s/ William H. Baughman, Jr.
                                                       United States Magistrate Judge

---

[32]R.Ex. A, R.Ex. B.